UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EARL THOMAS and BRIDGETT THOMAS, Individually and as Representatives of the ESTATE OF DANNY THOMAS, | § § § § § | |
| Plaintiff, | § | No. SA:12-CV-33-DAE |
| vs. | § § § | |
| CITY OF SAN ANTONIO, TEXAS; DAVID R. BERRIGAN, Individually; and BRYAN BALDWIN, Individually, | § § § § | |
| Defendant. | § § | |

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Plaintiffs Earl Thomas and Bridgett Thomas (collectively, "Plaintiffs") sued the City of San Antonio and police officers David Berrigan and Bryan Baldwin (collectively, "Defendants") for the shooting death of their son, Danny Christopher Thomas ("Thomas"). On December 23, 2013, the Court heard argument on the Defendant's Motion for Summary Judgment. (Dkt. # 34.) Christopher J. Gale, Esq., appeared on behalf of Plaintiffs, and Nathan Mark Ralls, Esq., represented Defendant Baldwin.

Upon careful consideration of the supporting and opposing memoranda, as well as the parties' arguments at the hearing, the Court **GRANTS** Defendant's Motion for Summary Judgment.

<u>BACKGROUND</u>

On the afternoon of February 4, 2010, police officers, including Defendant Baldwin entered Thomas's apartment to execute a search warrant. (Dkt. # 44 ¶ 5; Dkt. # 41 at 3.)  The search warrant authorized officers to search for a stolen weapon supposedly in the possession of an individual who was living at 3903 Barrington #1416 in San Antonio.  (Dkt. # 41 at 3; Dkt. # 34 Ex. A.)  Police officers, including Defendant Baldwin, breached the door, identified themselves as police, shouted that they had a warrant, and entered the living room of the apartment with their guns drawn.  (Dkt. # 41 at 3; Dkt. # 34 Ex. A-2.)  Baldwin entered the bedroom of the apartment with his gun drawn and found Thomas and another individual later identified as Larry Miller.  (Dkt. # 41 at 3; Dkt. # 34 Ex. A-3.)  Baldwin ordered the two men to get on the ground.  (Dkt. # 34 Ex. A-3.)  Miller complied and prostrated himself on a mattress in the room.  (<u>Id.</u>)  Thomas, who was across the room from Baldwin and to his right, knelt beside the mattress, but did not get on the ground or lie down.  (<u>Id.</u>; Dkt. # 41 at 3; Dkt. # 41 Ex. 1.)

Baldwin glanced away from Thomas to call for additional police assistance.  (Dkt. # 41 Ex. 1.)  When Baldwin looked back towards Thomas, he

saw Thomas rising from the floor.  (Id.)  Thomas had clenched his left hand and was bringing his hands together as he rose to his feet.  (Id.)  Before Thomas reached a standing position, Baldwin shot him, but Thomas, nonetheless, jumped out of a window.  (Dkt. # 41 Ex. 2.)  Officers found Thomas on the ground outside of the residence approximately twenty yards away.  (Dkt. # 34 Ex. A-6.)  Police officers later recovered a knife in the room near where Officer Baldwin had been standing.  (Dkt. # 41 Ex. 1.)

The ensuing autopsy revealed that Thomas "died as a result of a single gunshot wound to the left lateral abdomen."  (Dkt. # 41 Ex. 3 at 6.)  The medical examiner determined that the bullet entered through Thomas' left side and then traveled a path "slightly back to front, left to right, and upward."  (Id. at 6–7.)

On January 10, 2012, Plaintiffs filed a complaint asserting claims against Defendant Berrigan under 42 U.S.C. § 1983 ("§ 1983") for excessive force and under Texas state law for assault.  (Dkt. # 1 ¶ 16.)  Additionally, Plaintiffs asserted claims against all Defendants under §1983 alleging failure to properly supervise or train their subordinates, or both, and alleging they acquiesced to unconstitutional behavior by their subordinates.  (Id. ¶ 17.)  Plaintiffs also argued that Defendant Berrigan was not entitled to qualified immunity.  (Id. ¶ 22.)

Defendant Berrigan answered on March 30, 2012.  (Dkt. # 3.)  Defendant, the City of San Antonio, answered on June 19, 2012.  (Dkt. # 8.)  On

July 16, 2012, with leave of the Court, Plaintiffs filed a First Amended Complaint

adding Baldwin as a defendant.  (Dkt. # 12.)  Defendant Berrigan filed an amended

answer on July 30, 2012.  (Dkt. # 13.)  Defendant Baldwin answered the First

Amended Complaint on July 31, 2012.  (Dkt. # 14.)

On July 25, 2013, the City of San Antonio, Defendant Baldwin, and

Defendant Berrigan moved for summary judgment.[1]  (Dkt. ## 33, 34.)

Defendants Berrigan and Baldwin filed the instant Motion for

Summary Judgment asserting (1) they are both entitled to summary judgment on

Plaintiffs' claim of unreasonable search; (2) Berrigan is entitled to summary

judgment on Plaintiffs' claim of unreasonable search and seizure and excessive

force; (3) Baldwin is entitled to summary judgment on Plaintiffs' claim of

unreasonable detention; (4) Baldwin is entitled to summary judgment on Plaintiffs'

claim of excessive force; (5) Berrigan is entitled to summary judgment on all of

Plaintiffs' claims for failure to supervise or train and failure to intervene; (6) both

Berrigan and Baldwin are entitled to summary judgment on Plaintiffs' Fifth and

Eighth Amendment claims; and (7) both Berrigan and Baldwin are entitled to

summary judgment on Plaintiffs' claims under the Texas Tort Claims Act.

---

[1] Defendants' Motion for Summary Judgment (Dkt. # 34) was filed jointly by
Defendants Berrigan and Baldwin; however, because there are no longer claims
pending against Defendant Berrigan, the Court shall refer to this as Defendant's
Motion for Summary Judgment.

(Dkt. # 34.)  Additionally, both Berrigan and Baldwin assert that they are entitled to qualified immunity shielding them from all of Plaintiffs' claims.  (Id.)

On August 26, 2013, Plaintiffs filed unopposed motions to dismiss all claims against the City of San Antonio, Texas (Dkt. # 38) and against Defendant Berrigan (Dkt. # 39).  On August 29, 2013, the Court accepted both stipulations of dismissal, leaving Baldwin as the only remaining defendant.  (Dkt. # 42.)

Plaintiffs also filed a Motion for Leave to File Plaintiffs' Second Amended Complaint (Dkt. # 40) and a Response to Defendant Baldwin's Motion for Summary Judgment (Dkt. # 41) on August 26, 2013.  Plaintiffs acknowledge that they are no longer pursuing the claims related to the search and seizure, the claims under the Fifth and Eighth Amendments, or the claims against Defendants Berrigan and the City of San Antonio.  (Dkt. # 41 at 2.)

The Court granted leave, and the Plaintiffs filed the Second Amended Complaint on August 29, 2013.  The Court will address only those claims in the Defendant's Motion for Summary Judgment that remain in the Second Amended Complaint, specifically, (1) Plaintiffs' claim for excessive force against Defendant Baldwin pursuant to § 1983 and (2) Plaintiffs' claim for assault under the Texas Tort Claim Act.  (Dkt. # 41 at 2.)

On September 3, 2013, Baldwin filed Defendant's Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment.  (Dkt. # 43.)

5

## LEGAL STANDARD

A court must grant summary judgment when the evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court evaluates the proffered evidence in the light most favorable to the non-moving party. Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir. 1994). The Court "examines the pleadings, affidavits, and other evidence introduced in the motion, resolves any factual doubts in favor of the non-movant, and determines whether a triable issue of fact exists." Leghart v. Hauk, 25 F. Supp. 2d 748, 751 (W.D. Tex. 1998).

In seeking summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the non-moving party "to go beyond the pleadings and by [his or her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). The non-moving party "must, either by opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing a genuine issue as to a material fact exists." Leghart, 25 F. Supp. 2d at 751. "[Non-movants] are required to

6

identify the specific evidence in the record and to articulate the precise manner in which that evidence supports their claim." Id. Further, "Rule 56 does not require the district court to sift through the record in search of evidence to support a [non-movant's] opposition to summary judgment. Id.

If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the Court must grant summary judgment against that party. Celotex, 477 U.S. at 322.

DISCUSSION

I.    Qualified Immunity

Section 1983 provides a civil cause of action to persons who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States through the actions of an individual acting under color of state law. 42 U.S.C. § 1983. However, government officials are shielded from civil damages by the doctrine of qualified immunity when "performing discretionary functions . . . if their actions were objectively reasonable in light of the then clearly established law." Bazan ex rel. Bazan v. Hidalgo Cnty., 246 F.3d 481, 488 (5th Cir. 2001). Qualified immunity provides not only immunity from damages, but also immunity from the lawsuit itself. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "Qualified immunity promotes the necessary,

7

effective, and efficient performance of governmental duties, by shielding from suit all but the plainly incompetent or those who knowingly violate the law." <u>Tolan v. Cotton</u>, 713 F.3d 299, 304 (5th Cir. 2013) (quoting <u>Brumfield v. Hollins</u>, 551 F.3d 322, 326 (5th Cir. 2008)) (internal quotation marks omitted).

   The Court applies a two-prong test to determine whether a defendant is entitled to qualified immunity.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), <u>overruled in part by</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).  The first prong evaluates whether a constitutional right was violated.  <u>Id.</u>  The second prong examines whether the allegedly violated constitutional right was clearly established at the time of the conduct.  <u>Id.</u>  In <u>Pearson</u>, the Supreme Court announced that a court may choose which prong of the <u>Saucier</u> test to address first.  555 U.S. at 236. Moreover, the Supreme Court recognized that addressing the second prong of the <u>Saucier</u> test first "comports with [the] usual reluctance to decide constitutional questions unnecessarily."  <u>Reichel v. Howards</u>, 132 S.Ct. 2088, 2093 (2012).

   The Court will address the second prong of the <u>Saucier</u> test first and evaluate whether the constitutional right was clearly established at the time it was allegedly violated.  Under the second prong of <u>Saucier</u>, a defendant is entitled to qualified immunity if the defendant's conduct was "objectively reasonable under clearly established law existing at the time of the incident."  <u>Id.</u> at 490 (emphasis omitted).

The second prong of <u>Saucier</u>, consists of a two-part inquiry that asks "whether the allegedly violated constitutional rights were <u>clearly established at the time of the incident</u>; and if so, whether the [defendant's conduct] was <u>objectively unreasonable</u> in light of the then clearly established law."  <u>Tolan</u>, 713 F.3d at 304–05 (internal quotation marks omitted).  The inquiry into these intertwined questions focuses on whether the officer "violated clearly established . . . constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  "A right is clearly established if, in light of preexisting law, the unlawfulness of an action would be apparent to a reasonable officer."  <u>Manis v. Lawson</u>, 585 F.3d 839, 845–46 (5th Cir. 2009).

Here, where the alleged constitutional violation was Baldwin's excessive use of force, the inquiry becomes whether no reasonable officer could have believed deadly force was necessary when Thomas appeared to retrieve something from under a mattress and rose from the floor, disregarding Baldwin's orders.  <u>See</u> <u>Manis</u>, 585 F.3d at 845–46.  In light of Fifth Circuit precedent, the Court finds that Baldwin's use of deadly force did not violate clearly established law.

A.    <u>Clearly Established Law</u>

It is clearly established that the "Supreme Court precedent and cases in this circuit authorized deadly force when an officer had 'probable cause to

believe that the suspect pose[d] a threat of serious physical harm.'"  Manis, 585

F.3d at 845–46 (citing Tenn. v. Garner, 471 U.S. 1, 11–12 (1985)).  Moreover, the

Fifth Circuit "has found an officer's use of deadly force to be reasonable when a

suspect moves out of the officer's line of sight such that the officer could

reasonably believe the suspect was reaching for a weapon."  Manis, 585 F.3d at

844; see also Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379 (5th Cir. 2009).

   In 1985, the Supreme Court addressed a police officer's use of deadly

force to prevent the escape of an unarmed suspected felon.  Garner, 471 U.S. at 3.

The Court held that deadly force may only be used if "it is necessary to prevent the

escape and the officer has probable cause to believe that the suspect poses a

significant threat of death or serious bodily injury to the officer or others."  Id.

   In 1991, the Fifth Circuit, relying on Garner, upheld the use of deadly

force when an officer believed a suspect was reaching for a gun when he moved

his hands out of the officer's line of sight in defiance of the officer's orders.  Reese

v. Anderson, 926 F.2d 494 (5th Cir. 1991).  Reese acknowledged that an officer's

use of deadly force was reasonable even though the decedent was in a vehicle

"totally surrounded" by police officers because the decedent's actions of

repeatedly reaching under his seat could "cause a reasonable officer to fear

imminent and serious physical harm."  Id. at 501.

   Additionally, the Fifth Circuit declared that whether or not the decedent

actually was armed is irrelevant to the determination of the reasonableness of the

officer's actions.  Id.  The reasonableness of the officer's actions is an objective

inquiry:

> The 'reasonableness' of a particular use of force must be judged from
> the perspective of a reasonable officer on the scene, rather than with
> the 20/20 vision of hindsight. . . . [T]he 'reasonableness' inquiry in an
> excessive force case is an objective one:  the question is whether the
> officers' actions are 'objectively reasonable' in light of the facts and
> circumstances confronting them, without regard to their underlying
> intent or motivation.

Id. at 500 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

In 2009, the Fifth Circuit again addressed the issue of whether an

officer's use of deadly force was reasonable.  Ontiveros, 564 F.3d at 383.  In

Ontiveros, a police officer executed a felony warrant against Ontiveros after being

informed Ontiveros had threatened others, may have been drinking, possessed and

threatened to use a pistol and a rifle, and was believed to be capable of using those

weapons.  Id. at 381.  During the execution of the warrant, officers found

Ontiveros in a bedroom.  Id.  Ontiveros positioned himself behind a door,

obstructing the officer's view of his actions.  Id.  The officer fired two shots at

Ontiveros after he saw Ontiveros "reaching into a boot at chest level for what [the

officer] believed could be a weapon."  Id.  Ontiveros died from his wounds.  Id.

The court found that when the facts presented were viewed from the officer's

perspective, the officer's choice to use deadly force was not unreasonable.  Id. at

383.  "An officer could have reasonably believed that Ontiveros posed a threat of

serious physical harm to himself or other officers."  Id. at 385.  The court found

that the officer's actions were reasonable under the circumstances and did not

violate clearly established law.  Id.

Also in 2009, the Fifth Circuit upheld the determination that an officer

was justified in using deadly force after the decedent ignored five commands from

police to show his hands and repeatedly reached under the seat of his car.  Manis,

585 F.3d at 844.  In reviewing the district court's grant of summary judgment, the

Fifth Circuit found that the appellees on behalf of Manis failed to dispute "the only

fact material to whether [the officer] was justified in using deadly force:  that

Manis reached under the seat of his vehicle and then moved as if he had obtained

the object he sought."  Id.  Plaintiffs presented no evidence that called the officer's

statements into question.  Id. at 845.  The court held that although

> [a]ppellees also argue[d] various points based upon their perception of
> Manis' actual intention underlying his conduct . . . Manis's actual
> intention – if, indeed, that could be discerned – is not the test.  The
> question is whether in view of Manis's conduct, [the officer] was
> objectively reasonable in believing Manis posed a threat of serious
> harm.

Id.  The Manis court went on to recognize that the Fifth Circuit's case law "did not

prohibit the use of deadly force" in the situation faced by the officer in Manis.  Id.

at 846.

B.      The Operative Facts

The uncontroverted evidence supports Baldwin's statements regarding the events that transpired between his entry into the room and his shooting of Thomas.  Plaintiffs have failed to put forth any evidence contradicting Baldwin's statement that Thomas reached under the mattress to retrieve something and subsequently brought his hands together in a threatening manner.

The Fifth Circuit maintains that even in cases in which the defendant officer is the only person capable of testifying to what occurred, the officer's actions can still be found to be reasonable, and that officer's testimony can be sufficient to grant qualified immunity.   In Ontiveros, the officer was the only witness to the shooting.  Ontiveros, 564 F.3d at 383.  Appellants, representing Ontiveros, argued that the officer's account of events was unlikely; however, the Fifth Circuit noted that appellants provided "no evidence to support their skepticism and at the summary judgment stage, we require evidence – not absolute proof, but not mere allegations either."  Id. (internal quotation marks omitted). Despite the officer being the only witness, the Fifth Circuit found the officer's actions to be reasonable.  Id.

Like in Ontiveros, Plaintiffs here claim that Baldwin's statements regarding the shooting are untruthful.  However, Plaintiffs have not presented any evidence to support their theories.  In support of their Response to Defendant's

13

Motion for Summary Judgment, Plaintiffs submitted (1) the San Antonio Police Department Internal Affairs Unit Officer's Response Report (Dkt. # 41 Ex. 1); (2) the San Antonio Police Department Offense Report (Dkt. # 41 Ex. 2); (3) the Autopsy Report (Dkt. # 41 Ex. 3); and (4) the Statement of Michelle Archer (Dkt. # 41 Ex. 4).  Each of these exhibits supports or at least does not contradict Baldwin's account of the incident.

Plaintiffs contend that Baldwin's account of the shooting cannot be trusted because they claim the autopsy report reveals a "rear entry bullet wound" demonstrating that Thomas was shot in the back and contradicting Baldwin's statements.  (Dkt. # 41 at 4.)  However, Plaintiffs either misunderstand the medical examiner's report or are deliberately attempting to mischaracterize it.  The autopsy report clearly indicates that Thomas was shot in the side.  (Dkt. # 41 Ex. 3.)  It is true that the autopsy report states that the bullet followed a "slightly back to front, left to right, and upward" trajectory; however, this only indicates that once the bullet entered Thomas' abdomen from the side, it traveled towards his front.  (Id.) There are numerous possible explanations for the point of entry of the bullet and its subsequent trajectory, and the Court will not speculate as to which is most likely, but what is clear is that Thomas was not shot in the back.[2]  Additionally, Plaintiffs

---

[2] Even assuming for the sake of argument that Thomas had been attempting to flee, this alone does not preclude the Court from finding that Baldwin is entitled to qualified immunity.  See Brousseau v. Haugen, 543 U.S. 194, 200 (2004).

have not presented any possible explanation for the bullet's trajectory that would contradict Baldwin's account of the events that occurred just prior to the shooting or cast doubt on the reasonableness of his actions.  Neither the autopsy report nor Plaintiffs' conjectures create a genuine issue of material fact.

The relevant inquiry to determine whether Baldwin's use of force was reasonable focuses on Thomas' actions prior to Baldwin's firing of his weapon. The Plaintiffs have not put forth any evidence contradicting Baldwin's statements of the events leading up to the shooting.  In fact, Plaintiffs submitted the San Antonio Police Department Internal Affairs Unit Officer's Response Report in support of their Response to the Defendant's Motion for Summary Judgment. (Dkt. # 41 Ex. 1.)  This report supports Baldwin's account of what occurred prior to the shooting.

Because there is no evidence contradicting Officer Baldwin's account of what transpired, the Court relies on Baldwin's statements describing the events leading up to the shooting.

C.    Reasonableness

The second prong of Saucier addresses the reasonableness of the use of force in light of the clearly established law at the time of the incident.  To determine the reasonableness of Baldwin's actions, the Court inquires whether Thomas's actions gave Baldwin probable cause to believe that Thomas posed "a

threat of serious physical harm, either to the officer or to others." See Garner, 471 U.S. at 11–12.

Here, Baldwin was presented with a situation similar to those faced by the officers in Reese, Manis, and Ontiveros.  First, Baldwin was aware that the warrant he was executing at 3903 Barrington #1416 was for a stolen weapon supposedly possessed by a person living at that residence.  (Dkt. # 34 Ex. A-2.) Second, Baldwin stated that the warrant was high-risk and for that reason, the police entered with their guns drawn.  (Id.)  Third, Plaintiffs have not submitted evidence to dispute that when Baldwin entered the room off the living room there were two men present, only one of whom, Miller, complied with Baldwin's order by prostrating himself on the mattress. The Plaintiffs do not deny that Thomas did not prostrate himself, but only knelt down, defying Baldwin's orders.  Although Plaintiffs assert that by getting to his knees, Thomas was complying with Baldwin's orders, Plaintiffs have not provided a scintilla of evidence to contradict Baldwin's testimony that he ordered Thomas to get on the ground.  (Dkt. # 34 Ex. A-3.)  Baldwin asserted,

> I had taken my eyes off the suspect [Thomas] for a split second and when I turned back around, I saw that the suspect was . . . was now quickly moving back up. . . . I saw one of his [Thomas's] hands was clenched like he was holding something as his other hand started to move towards the clenched hand.  From my experience, I believed that he was clenching a gun or even a knife in an aggressive manner and he was getting ready to shoot or stab me.

16

(Dkt. # 34 Ex. A-4.)

Based on these events, Fifth Circuit precedent maintains that Baldwin's conduct was objectively reasonable under the clearly established law at the time of the shooting, and therefore, Baldwin is entitled to qualified immunity.

First, Baldwin, like the officer in <u>Manis</u>, lost sight of the suspect and believed the suspect had retrieved a weapon and posed an imminent threat.  <u>Manis</u> established that an officer's use of deadly force under these circumstances is reasonable.  <u>Manis</u>, 585 F.3d at 844.  Second, like in <u>Reese</u> and <u>Ontiveros</u>, Thomas's apparent retrieval of an object and subsequent act of bringing his hands together, as if holding a weapon, gave Baldwin probable cause to believe Thomas posed an immediate danger.  Clearly established law maintains that an officer in Baldwin's situation was authorized to exercise deadly force.  Finally, as the <u>Manis</u> court recognized, "even if contrary authority existed, the cases taken together [would] undoubtedly show that this area is one in which the result depends very much on the facts of each case and certainly would not clearly establish" that Baldwin's conduct violated the Fourth Amendment.  <u>See</u> <u>Manis</u>, 585 F.3d at 845– 46.

Therefore, because Baldwin's conduct was objectively reasonable under clearly established law at the time of the shooting, Baldwin is entitled to qualified immunity from Plaintiffs' §1983 claim for excessive force and the

17

Defendant's Motion for Summary Judgment on Plaintiffs' claim for excessive

force is hereby **GRANTED.**

II.   <u>Plaintiffs' Texas Tort Claims Act Claims</u>

      Baldwin also moved for summary judgment on Plaintiffs' Texas State

Tort Claims Act claims.  However, by granting summary judgment to Baldwin on

Plaintiffs' § 1983 claim for excessive force, this Court has resolved all of the

federal claims against Baldwin.  Nonetheless, because Plaintiff may not be able to

refile the Texas Tort Claims Act claim in state court, due to the statute of

limitations[3], the Court will exercise its pendant jurisdiction[4] and address the claim

on the merits.

      Plaintiffs pleaded a claim under Texas law for assault pursuant to the

Texas Tort Claims Act ("TTCA").  The Election of Remedies provision,

§ 101.106, of the Texas Tort Claims Act provides that

> If a suit is filed against an employee of a governmental unit based on
> conduct within the general scope of that employee's employment and
> if it could have been brought under this chapter against the
> governmental unit, the suit is considered to be against the employee in
> the employee's official capacity only.  On the employee's motion, the

---

[3] Under Texas law, the statute of limitations for a claim of assault is two years
from the date the assault occurred.  Tex. Civ. Prac. & Rem. § 16.003 (2005).  The
alleged assault occurred on February 4, 2010; thus, Plaintiff's claim for assault
expired on February 4, 2012.

[4] When a federal court properly has jurisdiction of a pendant state law claim at the
outset of a case, any subsequent mootness of the federal claims does not affect the
power of the district court to hear the claims, but only influences the calculus of
whether to exercise discretion.  <u>Rosado v. Wyman</u>, 397 U.S. 397, 403–04 (1970).

> suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as a defendant on or before the 30th day after the motion is filed.

Tex. Civ. Prac. & Rem. Code § 101.106(f).

Baldwin contends that Plaintiffs' suit is based on Baldwin's conduct within the scope of his employment and could have been brought against the City of San Antonio.  (Dkt. # 34 at 16.)  Baldwin asserts that Plaintiffs admitted he was acting within the scope of his employment in their pleadings, and additionally, that he qualifies as an employee according to the TTCA.  The TTCA defines an employee as "a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority . . . ."  Tex. Civ. Prac. & Rem. § 101.001(2).  Additionally, Baldwin maintains that the City of San Antonio qualifies as a governmental unit (Dkt. # 34 at 17), defined by the TTCA as "a political subdivision of this state, including any city . . . ."  Tex. Civ. Prac. & Rem. Code § 101.001(3)(B).  Baldwin argues a suit against a government employee acting within the scope of his employment must be dismissed if it could have been brought under the TTCA against the governmental unit.  (Dkt. # 34 at 17.)

In contrast, Plaintiffs argue that a suit for assault could not be brought under the TTCA according to § 101.057(b).[5]  (Dkt. # 41 at 15.)  Plaintiffs argue that because the TTCA does not waive immunity for intentional torts,  Baldwin's (and the Texas Supreme Court's) interpretation of §101.106(f) violates the open-courts provision of the Texas Constitution.  (Id. at 16.)

The TTCA provides a limited waiver of sovereign immunity which does not extend to suits alleging intentional torts.  Fontenot v. Stinson, 369 S.W.3d 268, 271 (Tex. App. 2011).  Section 101.106 was amended in 2003 to its present phrasing in an effort by the legislature

> to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery.

Mission Consol. Indep. Sch. Dist. v. Garcia, 253 S.W.3d 653, 657 (Tex. 2008).  The provision is "intended to protect governmental employees by favoring their early dismissal when a claim regarding the same subject matter is also made against the governmental employer."  Fontenot, 369 S.W.3d at 272.  The Texas Supreme Court clarified stating that the provision "sought to discourage or prevent recovery against an employee."  Franka, 332 S.W.3d at 384.

---

[5] Section 101.057(b) provides "[t]his chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities."

The phrase "under this chapter" in § 101.106(f) includes "any suit in which the plaintiff alleges a common law tort claim, regardless of whether the TTCA waives immunity for the claim." Fontenot, 369 S.W.3d at 272 (citing Franka v. Velasquez, 332 S.W.3d 367, 379 (Tex. 2011)).  The Texas Supreme Court explicitly held that a suit "is brought under the [TTCA] when it is filed, not when waiver of immunity by the Act is established." Franka v. Velasquez, 332 S.W.3d 367, 379 (Tex. 2011); see also Lund v. Giauque, No. 2-13-29, 2013 WL 5834398, at *1, -- S.W.3d-- (Tex. App. Oct. 31, 2013) (finding that Franka mandates the dismissal of a suit against a governmental employee acting within the scope of his or her employment and sued in his or her individual capacity under § 101.106(f) even if the governmental employer's immunity is not waived by the TTCA).

The question before the Court is whether Plaintiffs' claim for assault could have been brought against the City of San Antonio under the TTCA, within the meaning of § 101.106(f).

Plaintiffs have not challenged Baldwin's assertion that he was acting within the scope of his employment by a governmental unit at the time of the shooting.  "[C]laims brought against a public official acting within the general scope of [his or her] employment [are] considered to be against the officer in [his or her] official capacity only." Lopez v. Serna, No. 4-12-839, 2013 WL 5338470,

21

at *4 (Tex. App. Sept. 25, 2013) (citing Franka, 332 S.W.3d at 381) (finding that an inmate's claim for an intentional tort against a correctional officer acting within the scope of her employment could have been brought under § 101.106(f) even though the TTCA does not waive the immunity for intentional torts).

Because Plaintiffs' claims are against Baldwin in his official capacity, they could properly have been brought under the TTCA, even though the TTCA does not waive immunity for intentional torts.  Therefore, upon Baldwin's motion the claims again him should be dismissed.

Plaintiffs next argue that Franka's interpretation of § 101.106(f) violates the Open Courts provision of the Texas Constitution.  (Dkt. # 41 at 16.) The party challenging a statute has the burden of proving that it is unconstitutional. Lund, 2013 WL 5834398, at *3.  To establish an open-courts violation, a party must show, "(1) the statute restricts a well-recognized, common-law cause of action (the well-recognized prong) and (2) the restriction is unreasonable or arbitrary when balanced against the Act's purpose (the balance prong)."  Id.  The Texas Supreme Court observed that "restrictions on government employee liability have always been part of the tradeoff for the Act's waiver of immunity, expanding the government's own liability for its employees' conduct, and thus [are] a reasonable exercise of the police power in the interest of the general welfare." Franka, 332 S.W.3d at 385 (internal quotation marks omitted).

22

In <u>Lund</u>, the Texas Court of Appeals adopted the holding of two other Texas Courts of Appeal and two federal trial courts and found that <u>Franka</u>'s interpretation of § 101.106(f) "does not violate the open-courts provision because its restriction is reasonable when balanced against its purpose, and is, thus, not arbitrary or unreasonable." <u>Lund</u>, 2013 WL 5834398, at *9.  This Court agrees and finds that the <u>Franka</u> interpretation of §101.106(f) does not violate the open-courts provision of the Texas Constitution.

Because Plaintiffs have not established that there is a genuine issue of material fact regarding Plaintiffs' claims under the TTCA, Defendant's Motion for Summary Judgment on Plaintiffs' TTCA claims is hereby **GRANTED.**

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment on the claims remaining in the Second Amended Complaint.

IT IS SO ORDERED.

DATED: San Antonio, Texas, February 10, 2014.

_____
David Alan Ezra
Senior United States District Judge

23